THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "**ACT**"), OR UNDER THE SECURITIES LAWS OF ANY STATE. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION AND QUALIFICATION OR EXEMPTION THEREFROM.

## CONVERTIBLE NOTE

*U.S.$3,000,000*                                                                                                      March, 19, 2012

Subject to the terms and conditions of this Convertible Note (this "**Note**"), for good and valuable consideration received, Digital Domain Media Group, Inc., a Florida corporation (the "**Company**"), promises to pay to Legend Pictures Funding, LLC or its authorized assignee pursuant to **Section 7.12** (the "**Holder**") the principal amount of U.S.$3,000,000, plus simple interest accrued on unpaid principal, as set forth below.

This Note is due and payable in full on July 18, 2012 (the "**Maturity Date**"); provided that this Note will instead: (a) be immediately due and payable prior to the Maturity Date on demand by the Holder upon the occurrence of an Event of Default (as defined in **Section 3** below); or (b) convert prior to the Maturity Date at the option of the Holder in its sole discretion into shares of capital stock of the Company pursuant to **Section 4**.

The following is a statement of the rights of the Holder of this Note and the terms and conditions to which this Note is subject, and to which the Holder hereof, by the acceptance of this Note, agrees:

1. **Interest Rate**. Simple interest will accrue (on the basis of actual days elapsed in a 360-day year of twelve 30-day months) at a rate equal to eight percent (8%) per annum on the unpaid principal amount hereof beginning on the date hereof until paid in full or converted pursuant to **Section 4**, at which time the Company promises to pay such interest (subject to the provisions of **Section 4**, if such payment is in connection with a conversion of this Note).

2. **Payments**.

    2.1  **Principal and Interest**. All payments of principal, interest and other amounts payable on or in respect of this Note or the indebtedness evidenced hereby shall, if not converted pursuant to **Section 4**, be made to the Holder on the Maturity Date and in U.S. dollars, by wire transfer, certified check or other "immediately available" funds. The Company shall make such payments to the Holder at the address of the Holder set forth on the signature page hereto or at such other place as the Holder shall have notified the Company of in writing.

    2.2  **No Set-off**. All payments on or in respect of this Note or the indebtedness evidenced hereby shall be made to the Holder without set-off or counterclaim and free and clear of and without any deductions of any kind.

    2.3  **Prepayment**. Except upon conversion pursuant to **Section 4**, the Company may prepay,

redeem or otherwise acquire this Note prior to maturity without the Holder's written consent upon five (5) business days' written notice to the Holder. Upon receipt of such notice, the Holder may elect to convert this Note pursuant to Section 4 within two (2) business days of receipt thereof.

2.4 **Release Upon Payment or Conversion**. Upon irrevocable payment in full or conversion pursuant to **Section 4** of all of the outstanding principal and interest of this Note, the Company shall be forever released from all of its obligations and liabilities under this Note.

3. **Event of Default**. Regardless of anything to the contrary contained herein, this Note shall be immediately due and payable, subject to the terms of this **Section 3**, upon the occurrence of any of the following, whatever the reason or cause, whether voluntary or involuntary or effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body (each an "**Event of Default**"):

    3.1 **Insolvency**. The Company becomes insolvent or makes any assignment for the benefit of its creditors.

    3.2 **Admission**. The Company admits in writing its inability to pay its debts generally as they become due.

    3.3 **Bankruptcy**. The Company (a) files (or consents to the filing of) any petition or complaint pursuant to federal or state bankruptcy or insolvency laws seeking the appointment of a receiver or trustee for any of its assets, seeking the adjudication of the Company as bankrupt or insolvent, seeking an "order for relief" under such statutes, or seeking a reorganization of or a plan of arrangement for the Company and (b) such petition is not dismissed within 60 days after the filing thereof.

    3.4 **Default**. The Company defaults in the due observance or performance of any covenant, condition or agreement on the part of the Company to be observed or performed pursuant to the terms of, or breaches any representation or warranty given with respect to, this Note or that certain Settlement and Release Agreement, dated as of the date hereof, between the Company, Holder and Digital Domain Productions, Inc., and if curable, fails to cure such default within 60 days after the Holder gives notice of such default to the Company.

4. **Conversion**. The Company and the Holder hereby agree as follows:    *($5.64)*

    4.1 **Conversion**. All, but not less than all, of the principal amount of this Note then outstanding and all, but not less than all, of the accrued and unpaid interest due hereunder may be converted, at the option of the Holder in its sole discretion, into common stock of the Company at any time on or prior to the Maturity Date upon two (2) business days' notice to the Company. This Note shall be convertible into that number of shares of the Company's common stock (the "**Conversion Shares**") obtained by dividing (i) the then outstanding principal amount hereof plus all accrued and unpaid interest thereon through, and including, the date of conversion by (ii) $[ ʌ ] (i.e., the closing price on the New York Stock Exchange of the Company's common stock on the date hereof), with cash payable in lieu of fractional shares (based on such closing price).

2

4.2 **Rule 144 Compliance.** For the period beginning on the date that is six months after the date hereof and ending on the first anniversary of the date hereof, the Company shall (i) make available adequate current public information, pursuant to the requirements of Rule 144; (ii) file with the SEC in a timely manner all reports and other documents required to be filed by it under the Act and the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"); and (iii) furnish to the Holder promptly upon request (x) a written statement by the Company as to its material compliance with the reporting requirements of Rule 144 and the applicable provisions of the Act and the Exchange Act and (y) such other reports and documents of the Company, and take such further actions at Holder's expense, as Holder may reasonably request in availing itself of any rule or regulation of the SEC allowing Holder to sell any Conversion Shares without registration under the Act.

5. **Representations of the Company.** On and effective as of the date hereof, the Company makes to the Holder the representations and warranties on **Exhibit A**.

6. **Representations of the Holder.** On and effective as of the date hereof, the Holder makes to the Company the representations and warranties on **Exhibit B**.

7. **Miscellaneous.**

   7.1 **Further Assurances.** Each party agrees to cooperate fully with the other party and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by the other party to evidence and reflect the transactions described herein and contemplated hereby, and to carry into effect the intents and purposes of this Note.

   7.2 **Notices.** All notices (including other communications required or permitted) under this Note must be in writing and must be delivered to the applicable address set forth on the signature page below (a) in person, (b) by registered or certified mail, postage prepaid, return receipt requested, (c) by a generally recognized courier or messenger service that provides written acknowledgement of receipt by the addressee, or (d) by facsimile or other generally accepted means of electronic transmission with a verification of delivery. Notices are deemed delivered when actually delivered to the address for notices. Any party may furnish, from time to time, other addresses for notices to it.

   7.3 **Attorneys' Fees and Costs.** If any legal action, arbitration or other proceeding is brought to enforce or interpret this Note or matters relating to it, the substantially prevailing party will be entitled to recover reasonable attorneys' fees and other costs incurred in such action, arbitration or proceeding from the other party, in addition to any other relief to which such prevailing party is entitled.

   7.4 **Severability.** The provisions of this Note are severable. The invalidity or unenforceability, in whole or in part, of any provision of this Note shall not affect the validity or enforceability of any other of its provisions. If one or more provisions hereof shall be declared invalid or unenforceable, the remaining provisions shall remain in full force and effect and shall be construed in the broadest possible manner to effectuate the purposes hereof. The parties further agree to replace such void or unenforceable

3

provisions of this Note with valid and enforceable provisions which will achieve, to the extent possible, the economic, business and other purposes of the void or unenforceable provisions.

7.5 **Headings; Exhibits; References.** The headings in this Note are only for convenience and ease of reference and are not to be considered in construction or interpretation of this Note, nor as evidence of the intention of the parties hereto. All exhibits attached to this Note are incorporated herein. Except where otherwise indicated, all references in this Note to Sections refer to Sections of this Note.

7.6 **Counterparts.** This Note may be executed in separate counterparts, and when executed, separately or together, all of such counterparts shall constitute a single original instrument, effective in the same manner as if all parties hereto had executed one and the same instrument. A facsimile signature page shall be deemed an original.

7.7 **Entire Agreement.** This Note (together with its exhibits) is the complete and exclusive statement of agreement and understanding of the parties with respect to matters in this Note and is a complete and exclusive statement of the terms and conditions thereof. This Note replaces and supersedes all prior written or oral agreements, statements, correspondence, negotiations and understandings by and among the parties with respect to the matters covered by it. No representation, statement, condition or warranty not contained in this Note or its exhibits is binding on the parties.

7.8 **Amendments.** Any provision of this Note may be amended or modified upon the written consent of all parties to this Note.

7.9 **Delays or Omissions.** No delay or failure by any party to insist on the strict performance of any provision of this Note, or to exercise any power, right or remedy, will be deemed a waiver or impairment of such performance, power, right or remedy or of any other provision of this Note nor shall it be construed to be a waiver of any breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring.

7.10 **Interpretation.** If any claim is made by a party relating to any conflict, omission or ambiguity in the provisions of this Note, no presumption or burden of proof or persuasion will be implied because this Note was prepared by or at the request of any party or its counsel.

7.11 **Governing Law; Venue.** This Note shall be governed by and construed in accordance with the laws of the State of California, excluding that body of law relating to conflict of laws. The parties consent to the jurisdiction of all federal and state courts in California. Venue will lie exclusively in Los Angeles County, California.

7.12 **Successors and Assigns.** The provisions hereof shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors and administrators of the parties hereto.

7.13 **Replacement of Note.** Upon receipt of evidence reasonably satisfactory to the Company of the loss, theft, destruction or mutilation of this Note and (in the case of loss, theft or

destruction) upon delivery of an indemnity agreement (with surety if reasonably required) in an amount reasonably satisfactory to the Company, or (in the case of mutilation) upon surrender and cancellation of this Note, the Company will issue, in lieu thereof, a new Note of like tenor.

[Remainder of Page Intentionally Left Blank]

S-1

IN WITNESS WHEREOF, the parties have executed this Note as of the date first written above.

**HOLDER:**

Legend Pictures Funding, LLC

By: _____
Its: _____Lawrence S. Clark_____

Title:    CFO
Address: 4000 Warner Blvd, Bldg76
         Burbank, CA 91522
         (818) 954 - 3896
         (___) ___ - ____ (fax)
         818.954.3884

**COMPANY:**

Digital Domain Media Group, Inc.

By: _____
Title: _____

Title:   CEO and Chairman
Address: 10250 SW Village Parkway
         Port St. Lucie, FL 34987
         (772) 345-8500
         (772) 345-8113 (fax)

S-1

## Exhibit A

## REPRESENTATIONS AND WARRANTIES OF THE COMPANY

1. **Corporate Status.** The Company is a corporation duly incorporated, validly existing, and in good standing under the laws of the state of Florida.

2. **Authorization; Validity.** When executed and delivered by the Company, this Note will constitute the valid and legally binding obligation of the Company, enforceable in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting the enforcement of creditors' or security holders' rights. Upon issuance in accordance with the terms of this Note, the Conversion Shares will be duly authorized, validly issued, fully paid and non-assessable, and free of any liens or encumbrances except for restrictions on transfer under applicable securities laws and any agreement to which the Holder becomes a party.

3. **No Conflict.** The issuance of this Note and the issuance of the Conversion Shares do not and will not violate any agreements to which the Company is, or at the time of issuance will be, a party. The Company is not in violation or default of any provision of any contract, indenture or other agreement to which it is a party or by which it is bound, which violation or default would materially and adversely affect the business of the Company taken as a whole.

4. **Authorization and Reservation of Conversion Shares.** The Company shall authorize and reserve a sufficient number of Conversion Shares to enable the conversion of this Note.

5. **Litigation.** There is no action, suit, claim, proceeding or investigation pending or, to the Company's knowledge, threatened against the Company in writing at law or in equity or by any government agency or instrumentality which would materially and adversely affect the business of the Company taken as a whole.

### Exhibit B

### REPRESENTATIONS AND WARRANTIES OF HOLDER

1. **Authorization.** When executed and delivered by the Holder, this Note will constitute the valid and legally binding obligation of the Holder, enforceable in accordance with its terms, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting the enforcement of creditors' or security holders' rights.

2. **Accredited Investor.** The Holder is an accredited investor within the meaning of Regulation D under the Securities Act of 1933, as amended, and is experienced in evaluating and investing in companies such as the Company. The Holder is in a financial position to hold the Note and any Conversion Shares indefinitely and is able to bear the economic risk and a complete loss of the investment in the Note and Conversion Shares.

3. **Acquisition for the Holder's Own Account.** The Holder is acquiring the Note and the Conversion Shares for the Holder's own account, not as nominee or agent, for investment and not with a view to, or for resale in connection with, any distribution or public offering thereof within the meaning of the Securities Act as of 1933, as amended. By executing this Note, the Holder further represents that the Holder does not have any contract, undertaking, agreement, or arrangement with any person to sell, transfer, or grant participation to any such person or to any third person, with respect to the Note or the Conversion Shares.

4. **Restricted Securities.** The Holder understands that the Note and any Conversion Shares are characterized as "restricted securities" under the federal securities laws since they are being acquired from the Company in a transaction not involving a public offering and that under such laws and applicable regulations such securities may be resold without registration under the Securities Act of 1933, as amended, only in certain limited circumstances. The Holder represents that it is familiar with Rule 144 promulgated by the SEC, as presently in effect, and understands the resale limitations imposed thereby and by the Securities Act of 1933, as amended.